IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In re Subpoena to Havas Media Group USA, LLC | Civil Action No. 23-mc-3007 |

## GOOGLE'S MOTION TO COMPEL

Google LLC ("Google") respectfully moves to compel third-party Havas Media Group USA, LLC ("Havas") to comply with Google's subpoenas. Google has met and conferred with Havas, which does not consent to this motion.

### INTRODUCTION

Google issued two identical subpoenas to the advertising agency Havas as part of its effort to defend against multiple antitrust lawsuits, including by the Department of Justice ("DOJ"), concerning Google's display advertising business. The DOJ identified Havas as an "industry participant" to whom it reached out regarding alleged anticompetitive behavior by Google. The subpoenas to Havas include 16 requests (15 of which ask for only "documents sufficient to show"), seeking matters directly relevant to the underlying litigations, such as documents comparing Google and non-Google display advertising tools and data regarding the use of these tools. This information is uniquely in Havas's possession in its role as an intermediary between tool providers and advertisers. Despite repeated efforts by Google to negotiate accommodations to the subpoenas and to understand Havas's claims of burden, Havas has offered no more than general objections concerning confidentiality and statements that Google's requests are "overly broad" and "irrelevant." By refusing to meaningfully engage in negotiations, Havas is effectively trying to quash the subpoenas. Google now asks this Court to compel Havas to comply with the subpoenas.

## BACKGROUND

### I.  The Underlying Litigations

Google is defending itself against putative class actions brought by private publishers and by advertisers, individual private actions, as well as an action brought by state attorneys general in a multi-district litigation currently consolidated in the Southern District of New York (the "MDL"). Each of the MDL actions against Google centers on the marketplace for digital display advertising and alleges that Google engaged in anticompetitive or deceptive behavior with respect to its display advertising business.

Separately, Google has been sued by the DOJ and a different set of state attorneys general in a matter pending in the Eastern District of Virginia (the "DOJ Action"), also alleging anticompetitive behavior with respect to Google's display advertising business.

### II.  The Subpoena

As part of that effort, Google served two subpoenas—one in the MDL and one in the DOJ Action—on Havas, each seeking the same information from Havas given the overlap in allegations between the two actions. (Exs 1, 2, Certificates of Service.) Havas is an advertisement agency that touts itself as being "one of the world's largest global communications groups"[1] and offering "best-in-class services in the fields of programmatic [ad] buying."[2] For example, Havas represents clients such as UberEats, Adidas, and the Coca-Cola Company, to name a few.[3] It is no surprise

---

[1] Havas Media, https://www.havas.com/who-we-are/our-mission/.

[2] Havas Media LinkedIn, https://www.linkedin.com/company/havas-media-network/.

[3] Havas Media, https://www.havas.com/work/.

then that industry publications have identified Havas as one of the top advertising agencies in the world.[4]

Moreover, Havas was identified by the DOJ as one of the "industry participants" the DOJ contacted as part of its investigation preceding its litigation. (Ex. 3, DOJ Interrogs. Resp.) Accordingly, it cannot be disputed that Havas has information relevant to the actions against Google. This is particularly so considering that Havas partners with Google's competitors. For example, Havas announced a partnership with PubMatic, a sell-side platform provider, to "enable[] buyers to connect their data more directly with that of publishers."[5] The performance of that partnership, shown through Havas' data and client deliverables, could help rebut any allegations concerning competition in the industry.

The subpoena to Havas includes 16 requests tailored to Havas's role in the marketplace, 15 of which ask for only "documents sufficient to show" Havas's agreements and assessment of ad tech tools. Google's limited requests are for:

- **Data** (Requests 2 & 3): documents and data sufficient to show through various metrics the performance of impressions purchased for Havas's top 25 private clients and for its governmental clients.

- **Client and Contract Information** (Requests 1 & 12): documents sufficient to show advertisers Havas represents who use the products at issue and documents sufficient to show Havas's agreements related to the marketplace (including those with its clients or with advertisement technology providers).

- **Strategic Documents** (Requests 4–11 & 14–16): documents sufficient to show how Havas measures returns on advertising spends, makes recommendations to its clients as to providers, tools, or strategies in the marketplace, and its assessment of providers and products in the marketplace.

---

[4] *See* Samantha Stallard, "The Ultimate List of Agency Holding Companies & Their Affiliates," Winmo, Nov. 30, 2021, available at https://www.winmo.com/agency-new-business/the-ultimate-list-of-agency-holding-companies-their-affiliates/.

[5] Havas Media, https://havasmedianetwork.com/havas-media-group-north-america-partners-with-pubmatic-to-increase-advertiser-return-on-ad-spend/.

- **Documents Concerning the Litigation** (Request 13): all documents concerning investigation or litigation concerning Google's display advertising products, including all documents concerning the MDL and DOJ Actions, all communications involving Havas and any governmental agency, all documents that Havas provides to any governmental agency, and all documents Havas produces in the MDL and DOJ actions.

### III.     Google's Efforts to Work with Havas

Havas was served with subpoenas in the SDNY and EDVA matters, along with the governing protective orders in each case, on May 19, 2023, with a compliance deadline of June 1, 2023. (Exs. 2–5, Subpoenas & Certificates of Service.) Rather than engage substantively with Google's requests, Havas submitted boilerplate, general objections on June 1, 2023, refusing to produce documents in response to any of Google's requests and raising general confidentiality concerns. (Exs. 6, 7, Havas Objs.) For example, in response to Google's request for information concerning the litigation or investigations against it, including communications between Havas and Plaintiffs and documents Havas provided to Plaintiffs, Havas responded:

> In addition to its General Objections set forth above, Havas specifically objects to this Request to the extent it seeks information that is confidential, sensitive, proprietary, and/or constitutes trade secrets, and Propounding Party has not demonstrated a substantial need for the documents. Havas further specifically objects to this Request on the grounds that it is vague, unclear, imprecise, unduly burdensome and oppressive. Havas further specifically objects to this Request on the grounds that it seeks documents and information that are not relevant to the claims or defenses, not reasonably calculated to lead to discovery of admissible evidence, and are not proportional to the needs of the case. Havas also specifically objects to this Request on the grounds that it does not identify the documents sought with sufficient particularity. Havas further specifically objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or attorney work product doctrine.

(Exs. 6, 7, Havas Resp. to Request No. 13.)

This is not an isolated example. Havas similarly responded as follows to Google's request for "[d]ocuments sufficient to show all Advertisers whom You represented, including any federal

or state agencies or departments, and who used Ad Tech Products or purchased Display Advertising during the Relevant Period":

> In addition to its General Objections set forth above, Havas specifically objects to this Request on the grounds that it seeks documents and information from a non-party that are not relevant to the claims or defenses in the litigation, not reasonably calculated to lead to discovery of admissible evidence, and are not proportional to the needs of the case. Havas also specifically objects to this Request on the grounds that it does not identify the documents sought with sufficient particularity. Havas further specifically objects to this Request to the extent it seeks information that is confidential, sensitive, and proprietary, and Propounding Party has not demonstrated a substantial need for the documents. Havas further specifically objects to this Request on the grounds that it is vague, unclear, imprecise, unduly burdensome and oppressive. Havas further specifically objects to this Request because it purports to require Havas to share its confidential and proprietary information with another industry participant in the context of a litigation involving antitrust laws that by their nature are intended to minimize information sharing among industry participants.

(Exs. 6, 7, Havas Resp. to Request No. 1.)

      A.      **Initial Discussion**

During an initial discussion on June 6, 2023, Google explained the relevance of the categories of documents it was requesting because Havas expressed concern about why Google sought this information:

- **Data** (Requests 2 & 3): Data assessing the performance of ad tech tools as measured against one another and the prevalence with which advertisers or publishers use Google's products or another entity's are squarely relevant to assessing Google's market power (if any) and the quality of the different tools in the marketplace.

- **Client and Contract Information** (Requests 1 & 12): This material is relevant to understanding the mechanics of purchases in the marketplace, including to develop Google's defense that only direct purchasers of advertising technology may bring claims against Google (rather than those who purchase through an intermediary, like Havas).

- **Strategic Documents** (Requests 4–11 & 14–16): Havas's analysis of tools and providers in the marketplace are relevant to key players' purchasing decisions and assessments of the different available products and providers in the marketplace.

- **Documents Concerning the Litigation** (Request 13): Havas's communications with Plaintiffs or documents provided to plaintiffs about allegations related to those at issue in these suits are by definition relevant to the actions.

(Ex. 8, A. Syed July 19, 2023 Email.)

Moreover, Google made clear that it was not asking Havas to conduct any custodial searches for documents but was instead asking for only specific data and "go-get" documents. As Google explained, for 11 of the 16 requests (the category of "Strategic Documents" set forth above), Havas could produce a small set of year-end summaries, media plans, or other comparable summary documents prepared for clients that could satisfy all of those requests. In other words, one year-end client summary potentially could be responsive to 11 of the 16 requests.

In response, counsel for Havas argued in summary fashion that the requests were simply "not relevant." Moreover, Havas repeated that it had confidentiality concerns (without providing any specifics as to what those concerns were), to which Google again referenced the two-tier, protective orders that were sent to Havas on two separate occasions. (Exs. 4, 5, Protective Orders Appended to Subpoenas.) Moreover, to further address any genuine confidentiality concerns, Google offered to consider any objections or modifications Havas proposed to the protective orders. Havas's counsel agreed to further consider the requests with his client but would not even preliminarily agree to search for any responsive materials.

    B.    **Havas Continues to Stonewall**

The parties met again on June 20, 2023, at which time Havas's counsel stated that Havas was disappointed that Google was not withdrawing *all* of its requests. (Ex. 8, A. Syed July 19, 2023 Email.) Havas took the position that Google did not need documents or data beyond what the Department of Justice requested from Havas, even though the DOJ Action is only one of many actions against which Google is defending itself. Again, counsel for Havas insisted that it was not

willing to produce documents given their sensitive nature and its determination that Google's requests were not relevant.

As what appears to have been another effort to delay, Havas then asked Google to provide contact information for other subpoenaed advertising agencies so Havas could confer with them regarding their determination of relevance and whether they had been willing to provide confidential information. But when Google's counsel provided information for two third-party advertising agencies Google subpoenaed (*Id.*), counsel for Havas took the position that those third parties were not comparable to Havas, which according to him, is a much more significant industry player, yet would not commit to who he thought would be comparable.

### C.     Havas Would Agree to Only an Extremely Limited Production

Havas ultimately offered to produce only its agreements with Google entities, agreements with any state or federal government entities, and communications with the DOJ or any state attorneys general as well as its internal tool "scorecards," for which Havas provided only a limited description and that do not appear to provide color on which clients use these tools, the effectiveness of their use, or Havas's recommendations to clients concerning these tools. (Ex. 8, A. Syed July 25, 2023 & July 27, 2023 Emails.) Havas was not willing to produce any other documents or data, effectively disregarding more than half of Google's requests.

But, this falls far short of the information Google needs to defend against the sprawling claims against it. For example, Google needs information concerning Havas's agreements with other advertising technology providers to better understand Google's market share. For the same reason, Google needs data and documents concerning the performance of different tools. And, Google needs Havas's agreements with its clients to understand whether clients make purchases

through an intermediary agency rather than directly through providers and the scope of the agency's authority under those agreements.

Google's efforts to even further narrow the information it sought were rebuffed by Havas. For example, Google tried to help Havas in narrowing the information it would need to review to comply with the subpoena by providing a non-exhaustive list of potential providers in the industry with which Havas may have contracted. Google also offered to limit its requests for client agreements and summaries to a smaller subset of Havas's clients if Havas could provide a list of its top 25 clients to help Google identify the clients in which it would be most interested. And, to better understand how it could reasonably limit its data request in response to Havas's unsubstantiated claims of burden, Google asked Havas to provide *some* information concerning how it keeps its data, what fields are available to it, and for what period.

But, Havas refused to engage in any of these efforts. As a result, discussions reached an impasse during the parties' July 31, 2023 meet and confer when Havas refused to provide a list of Havas's top 25 clients or any information in response to Google's subpoenas until Google identified the handful of Havas clients in which it was most interested, even though Google is not in a position to know who Havas's clients are. (Ex. 8, A. Syed July 31, 2023 Email.)

## LEGAL STANDARD

In general, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party[.]" Fed. R. Civ. P. 26(b)(1); *see also Williams v. Blagojevich*, No. 05-C-4673, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008) ("The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules" (citation omitted)). Because discovery is a search for the truth, courts have "consistently adopted a liberal interpretation of the discovery rules" in ruling on a motion to compel. *Sabratek Liquidating LLC v. KPMG LLP*, No. 01-C-9582, 2002 WL 31520993, at *1 (N.D. Ill. Nov. 13, 2002).

With respect to a third-party subpoena, the serving party may move to compel compliance with the subpoena "[a]t any time." Fed. R. Civ. P. 45(d)(2)(B). While it is true that the subpoena cannot impose an "undue burden or expense" on the subpoenaed entity, the subpoenaed party's claim to burden must go beyond the realm of the speculative; it must provide some information substantiating its burden of compliance. *Id.* at 45(d)(1); *Reed v. Wexford Health Sources, Inc.*, No. 20-CV-01139-SPM, 2022 WL 4483949, at *6 (S.D. Ill. Sept. 27, 2022).

## ARGUMENT

Google's requests are relevant, tailored to the claims against it, and tailored to Havas's position as an advertising agency. Moreover, Havas's claims of burden are unsubstantiated, as are its concerns over confidentiality given the two-tiered protective orders governing the underlying litigation. As a result, Havas has no basis for failing to comply with Google's subpoenas, and Google's motion to compel should be granted.

### I. The Requests are Relevant.

Havas's contention that *none* of Google's requests is relevant is plainly wrong. All of the requests are directly pertinent to the claims at issue in the multiple lawsuits against Google and easily meet the standard for being "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

*First*, Google's requests (RFPs 2 and 3) for data concerning the performance of impressions Havas purchased for its clients is plainly relevant to, *inter alia*, assess the performance and effectiveness of both Google's tools and its competitors, the market share of those tools, and the rate at which industry participants use Google's products or one of its competitor's. Moreover, this data is uniquely in Havas's possession, custody, or control, as it is the entity that purchases advertising impressions on behalf of its clients. Indeed, courts routinely find similar data in

antitrust actions to be both relevant and discoverable. *See, e.g.*, *Jones v. ACE Cheer Co. LLC*, No. 20-CV-2892-SHL-TMP, 2022 WL 969720, at *2 (W.D. Tenn. Mar. 30, 2022) ("The discovery requests are relevant to establishing harm and calculating damages from the alleged anticompetitive scheme."); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, No. CV 19-MD-02878-NMG, 2020 WL 5370577, at *3 (D. Mass. Sept. 8, 2020) (finding third party's profit margin data to be relevant in an antitrust case where "[m]arket power is shown through either direct evidence of the control of prices or the exclusion of competition, or circumstantial evidence showing that the defendant had a dominant share in a well-defined relevant market").

*Second*, Google's requests (RFPs 1 & 12) for the clients Havas represents and its related agreements, including with advertising technology providers, are relevant to Google's defense that certain Plaintiffs (including, for example, in the putative class action brought by private advertisers) are indirect purchasers of Google's products and thus lack standing to sue for antitrust damages. *See, e.g.*, *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746-47 (1977). The language of Havas's agreements with its clients likely shows whether Havas or its clients purchase impressions through Google or one of its competitors. Similarly, Havas's agreements with advertising technology providers likely show that it engages directly with the provider (instead of its client) and the terms on which Havas as an advertisement agency engages with Google versus one of Google's competitors. Like the data, Havas is uniquely in possession, custody, or control of these materials given its status as an intermediary for its clients.

*Third*, Google's requests (RFPs 4–11 & 14–16) for documents showing Havas's analysis of tools, strategies, and providers in the marketplace are relevant to show a purchaser's (Havas) assessment of Google's products as compared to others as well as the resulting advice Havas offered to its clients about display advertising purchases. *See, e.g.*, *Cattle & Beef Antitrust Litig.*

*v. JBS S.A.*, No. 8:22-CV-204, 2022 WL 17718553, at *10 (D. Neb. Dec. 15, 2022) (third party's documents "discussing or analyzing the effects of [a fire] on the [relevant] U.S. market[s] for [beef]" and discussing or analyzing the decline of beef prices, the supply of relevant cattle, and Defendant's practices were relevant to antitrust allegations); *In re Ranbaxy Drug Application Antitrust Litig.*, 2020 WL 5370577, at *4 (granting motion to compel discovery into third party's forecasts about launch of relevant pharmaceutical product as "relevant to calculating the impact of varying numbers of generic entrants and damages").  Considering its position in advising clients on advertising purchases, Havas is in unique possession, custody, or control of these materials for its clients.

*Fourth*, Google's request (RFP 13) for Havas's communications with Plaintiffs in the various actions and documents Havas provided to Plaintiffs are facially relevant to Plaintiffs' investigation into and claims against Google.

## II. While Rejecting Reasonable Proposals by Google to Reduce Any Purported Burden, Havas Has Offered Only Speculative Claims to Burden.

Google has made repeated efforts to resolve any of Havas's legitimate burden concerns with the subpoena, including agreeing to limit its document requests to only a small subset of Havas's clients (on the condition that Havas provided Google with a list of its top 25 clients to aid in negotiations), limit its data request to certain clients (on the same condition) and to certain metrics or time period based on what data was reasonably accessible to Havas, and negotiate modifications to the already robust protective orders governing the litigation.  Notwithstanding these many proposals, and mirroring its written objections, Havas's counsel has summarily argued that Google's requests are "overly burdensome" without providing *any* articulation of its burden to aid in the parties' negotiations.

As the party objecting to the subpoena, Havas "bears the burden of demonstrating [it] will be subject to an undue burden." *PsyBio Therapeutics, Inc. v. Corbin*, No. 20 C 3340, 2021 WL 4459527, at *3 (N.D. Ill. Sept. 29, 2021); *see also Abhe & Svoboda, Inc. v. Hedley*, No. CV 15-1952 (WMW/BRT), 2016 WL 11509914, at *3 (D. Minn. Mar. 15, 2016) ("[a] party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment)). And, as courts routinely recognize, "[b]oilerplate objections will not support a finding of undue burden." *Prime Therapeutics LLC v. CVS Pharmacy, Inc.*, No. 22-MC-35 (WMW/JFD), 2022 WL 17414478, at *2 (D. Minn. Dec. 5, 2022). Put another way, "[o]ne claiming undue burden must do more than say it is so." *PsyBio Therapeutics, Inc.*, 2021 WL 4459527, at *3.

Here, Havas has offered nothing more than a repeat of its boilerplate objections and its claims to burden are thus no more than speculation that fall short of establishing that the subpoenas subject it to an undue burden. This is particularly so considering that nearly all of Google's requests ask for "documents sufficient to show," rather than asking for custodial searches. Absent any showing of undue burden, Google's motion to compel must be granted. *See, e.g.*, *W. Res., Inc. v. Union Pac. R. Co.*, No. 00-2043-CM, 2002 WL 1822432, at *4 (D. Kan. July 23, 2002) ("Neither has Greenwood provided details of the alleged burden upon him in terms of time and money required to produce the requested documents. This detailed information is necessary to enable the Court to determine the burden imposed by the discovery. On the facts before it, the Court finds Plaintiff's need for the documents requested outweighs any speculative burden to Greenwood"); *Paisley Park Enterprises, Inc. v. Boxill*, No. 17-CV-1212 (WMW/TNL), 2019 WL

1036059, at *5 (D. Minn. Mar. 5, 2019) ("Sidebar did nothing more than raise a series of boilerplate objections, which are insufficient to justify its failure to respond.")

### III. Havas's Confidentiality Concerns Are Unfounded in Light of the Two-Tier Protective Orders.

While Havas has repeated general confidentiality concerns with Google's requests, these concerns are adequately protected by the robust, two-tier protective orders governing both the MDL and the DOJ actions that allow for outside attorney's eyes-only designations. *See, e.g.*, *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 1:18-CV-00864, 2019 WL 11583441, at *4 & n.3 (N.D. Ill. May 14, 2019) (collecting cases) ("there are plenty of federal cases that hold two-tiered protective orders such as the Confidentiality Order that governs this case are sufficient to accommodate a non-party's confidentiality concerns."). Moreover, Google has offered to negotiate additional modifications to the protective orders with Havas if Havas has any specific concerns that were not addressed by their terms. Havas has refused to engage in this offer and has yet to point to a single deficiency in the protective orders.

Nor has Havas articulated what materials warrant heightened confidentiality measures. Even if it did, courts regularly find that the production of even trade secrets may be adequately protected by a robust protective order as the ones governing the underlying litigations here. *See, e.g.*, *Dr. Greens, Inc. v. Spectrum Labs.*, LLC, 2012 WL 3111746, at *3 (D. Kan. July 31, 2012) ("As the court in the underlying action has already found, production of trade secrets or other similar confidential information can be adequately protected under an 'Outside Attorneys Eyes Only' protective order.").

Accordingly, Havas's confidentiality objections are without merit and do not warrant non-compliance with Google's subpoenas.

## CONCLUSION

Google respectfully requests that the Court grant its motion to compel Havas to comply with Google's subpoenas duces tecum in full and produce responsive documents as soon as practicable.

Dated: September 6, 2023

Respectfully submitted,

*/s/ Michael W. Drumke*
/s/ Michael W. Drumke
Michael W. Drumke
Swanson, Martin & Bell, LLP
330 North Wabash Avenue, Suite 3300
Chicago, Illinois 60611-3604
Telephone: (312) 222-8523
E-mail: mdrumke@smbtrials.com

Jamie Alan Aycock
(*pro hac vice application forthcoming*)
Ayla S. Syed
(*pro hac vice application forthcoming*)
Yetter Coleman LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
(713) 632-8002
jamieaycock@yettercoleman.com
asyed@yettercoleman.com

*Attorneys for Google LLC*